## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LATISHA B. SCHUENEMANN, ESQUIRE, as Limited Power of Attorney for IBRAHIM MAHHOU** <br> C/o Barley Snyder <br> 2755 Century Blvd <br> Wyomissing, PA 19610 <br><br> *Plaintiff,* <br><br> v. <br><br> **DOMENIC OLIVERI** <br> C/o Pennsylvania State Police, Troop K - Philadelphia <br> 2201 Belmont Avenue <br> Philadelphia, PA 19131 <br><br> *And* <br><br> **PENNSYLVANIA STATE POLICE** <br> 1800 Elmerton Avenue <br> Harrisburg, PA 17110 <br><br> *And* <br><br> **JOHN DOE PENNSYLVANIA STATE POLICE OFFICER** <br><br> *Defendants.* | **CIVIL ACTION** <br><br> **NO.** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff, Latisha B. Schuenemann, Esquire, as Limited Power of Attorney for Ibrahim Mahhou, by and through his attorneys, Saltz Mongeluzzi Bendesky, P.C., alleges as follows:

### PARTIES

1.      Plaintiff, Latisha B. Schuenemann, Esquire, is an adult individual, resident of the Commonwealth of Pennsylvania, and attorney licensed in the Commonwealth of Pennsylvania with a principal business address of 2755 Century Blvd Wyomissing, PA 19610.

2.     Ibrahim Mahhou is an adult individual who is and was, at all times relevant to this Complaint, a resident of the Commonwealth of Pennsylvania.

3.     On October 6, 2025, Latisha B. Schuenemann was designated by Ibrahim Mahhou to serve as his Limited Power of Attorney for purposes of, *inter alia*, pursuing claims and litigation. *See* executed Limited Power of Attorney attached hereto as "**Exhibit A**".

4.     Defendant, Domenic Oliveri ("Defendant Oliveri") is an adult individual and police officer with the Pennsylvania State Police in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at c/o Pennsylvania State Police, Troop K – Philadelphia, 2201 Belmont Avenue, Philadelphia, PA 19131. At all relevant times hereto, Defendant Oliveri was a Pennsylvania State Police officer assigned to Troop K - Philadelphia at 2201 Belmont Avenue, Philadelphia, PA 19131.

5.     Defendant, Pennsylvania State Police ("PSP"), is an agency of the Commonwealth of Pennsylvania ("the Commonwealth"), organized and existing under the laws of the Commonwealth, with its principal place of business located at 1800 Elmerton Avenue, Harrisburg, PA 17110.

6.     Defendant, John Doe Pennsylvania State Police Officer ("Doe State Trooper"), is a currently unknown individual who, at all relevant times, was police officer employed by, or were under the control of, Defendant PSP. Upon information and belief, and at all relevant times of this Complaint, Doe State Trooper was assigned to Troop K in Philadelphia, PA at 2201 Belmont Avenue, Philadelphia, PA 19131. Furthermore, upon information and belief, Doe State Trooper was involved in the incident giving rise to this lawsuit.

7.     At all times relevant to this Complaint, Defendant PSP owned, operated, maintained, was responsible for, and/or otherwise controlled Troop K – Philadelphia.

8.      At all times relevant to this Complaint, Defendant, PSP provided police services to the Commonwealth of Pennsylvania through, *inter alia*, Troop K – Philadelphia.

9.      At all times relevant to this Complaint, Defendants Oliveri and Doe State Trooper were employed by and/or under the control of Defendant PSP, and assigned to Troop K – Philadelphia.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this matter pursuant to 28. U.S.C. § 1331, as Plaintiff's claims arise under The Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Plaintiff further invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to adjudicate pendent state law claims.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants can be found in, reside, or transact business in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

13.     On May 31, 2025, Defendants Oliveri and Doe State Trooper were working and on duty as Pennsylvania State Police officers.

14.     On May 31, 2025, at approximately 2:30 a.m., while on duty, Defendants Oliveri and Doe State Trooper were in South Philadelphia. Defendants Oliveri and Doe State Trooper were in separate vehicles owned and provided to them by their employer, Defendant PSP.

15.     On May 31, 2025, at approximately 2:30 a.m., as well as the 24-hours leading up to that day and time, Philadelphia had undergone significant rain and thunderstorms. During this

time, the road surface conditions throughout Philadelphia, including South Philadelphia, were exceptionally wet.

16.    On May 31, 2025, at approximately 2:30 a.m., while on duty in South Philadelphia, Defendant Oliveri and/or Doe State Trooper observed a silver 2012 Chevrolet Camaro, License Plate No. F092617 and Vehicle Identification No. (VIN) of 2G1FK3DJ4C9186993 ("Subject Car").

17.    On May 31, 2025, at the time Defendant Oliveri and/or Doe State Trooper observed the Subject Car, the vehicle was clearly displaying its license plate number.

18.    On May 31, 2025, at approximately 2:30 a.m., Defendant Oliveri and/or Doe State Trooper attempted to perform a vehicle stop of the Subject Car in South Philadelphia. However, Defendant Oliveri and/or Doe State Trooper were unsuccessful and, as a result, initiated a high-speed pursuit of the Subject Car.

19.    On May 31, 2025, prior to the initiation of their high-speed pursuit of the Subject Car, Defendants Oliveri and Doe State Trooper did not have reasonable suspicion that the Subject Car and/or its occupants had engaged in any violent, felonious conduct or other justifiable reason to engage in the pursuit.

20.    On May 31, 2025, during their high-speed pursuit of the Subject Car throughout South Philadelphia, Defendants Oliveri and Doe State Trooper failed to properly notify the local authority, Philadelphia Police Department, who has primary jurisdiction in South Philadelphia.

21.    On May 31, 2025, during their high-speed pursuit of the Subject Car throughout South Philadelphia, Defendant Oliveri and/or Doe State Trooper knew, or should have known, that the Subject Car's tires had become flattened during the pursuit and, as a result, increased the risk

of harm of the chase to the public, including innocent third-party drivers on the roadway, and rendered the pursuit of the Subject Car even more outrageous.

22.    On May 31, 2025, in the early hours of that Saturday morning, Defendants Oliveri and Doe State Trooper engaged in their high-speed pursuit of the Subject Car throughout the densely populated residential and commercial neighborhoods South Philadelphia on the exceptionally wet roadways at significantly high rates of speed.

23.    On May 31, 2025, during their high-speed pursuit of the Subject Car throughout South Philadelphia, Defendants Oliveri and Doe State Trooper failed to discontinue the pursuit despite knowing that the value of apprehending the occupants of the Suspect Car was significantly outweighed by the danger the pursuit posed to the public, including innocent third-party drivers on the roadway.

24.    On May 31, 2025, during their high-speed pursuit of the Subject Car throughout South Philadelphia, Defendants Oliveri and Doe State Trooper failed to discontinue the high-speed pursuit despite the Subject Car's clearly visible license plate number and, as a result, its occupant(s) being easily identifiable for later apprehension or prosecution.

25.    Unsurprisingly, on May 31, 2025, Defendants Oliveri and Doe State Trooper's high-speed pursuit of the Subject Car throughout South Philadelphia ended in a horrifically catastrophic automobile accident with Plaintiff Ibrahim Mahhou—an innocent, third-party driver on the roadway.

26.    On May 31, 2025, at approximately 2:39 a.m., Mr. Mahhou was driving northbound on South 9th Street, a one-way, single lane roadway, and approaching the intersection of Federal Street in South Philadelphia, PA.

27.     On May 31, 2025, at approximately 2:39 a.m., as Mr. Mahhou was traveling northbound on South 9th Street and entering the Federal Street intersection, the Subject Car was simultaneously traveling westbound on Federal Street, a one-way, single lane roadway, and approaching the South 9th Street intersection while being pursued by Defendant Oliveri and/or Doe State Trooper as an exceptionally high rate of speed.

28.     On May 31, 2025, at approximately 2:39 a.m., Mr. Mahhou's car was violently struck on the right side by the Subject Car, which was being pursued by Defendants Oliveri and Doe State Trooper at a high rate of speed ("Crash"). The force and impact of the crash caused Mr. Mahhou's car to be thrust into multiple other vehicles.

29.     On May 31, 2025, immediately following the Crash, Mr. Mahhou was visibly unresponsive and temporarily trapped inside of his vehicle. As a result of the Crash, Mr. Mahhou suffered permanently paralyzing, catastrophically life-altering injuries.

30.     Upon information and belief, Defendants Oliveri and Doe State Trooper did not immediately notify emergency services or the Philadelphia Police Department that Mr. Mahhou's vehicle had been struck by the Subject Car and that Mr. Mahhou needed urgent medical care.

31.     Upon information and belief, several minutes after the Crash occurred, Defendants Oliveri and Doe State Trooper finally arrived onto the scene of the Crash.

32.     Plaintiff Mr. Mahhou was taken to Thomas Jefferson University Hospital with critically devastating orthopedic and neurological injuries, including traumatic brain injury and multiple spinal cord injuries.

33.     As a result of the Crash, Mr. Mahhou suffers from, *inter alia*, Locked-in Syndrome, a neurological disorder causing Mr. Mahhou to be fully and completely paralyzed from physical movement despite being completely cognizant and retaining consciousness.

34.    Upon information and belief, Pennsylvania State Police Field Regulations require the decision of initiating a police pursuit to be based upon a conclusion that the immediate danger to the public, as a result of the pursuit, is less than the immediate or potential danger to the public if the fleeing suspect remains at large.

35.    Prior to initiating the pursuit of the Suspect Car, Defendants Oliveri and Doe State Trooper did not reasonably believe, nor did they possess information to support any such belief, that the danger to the public if the occupant(s) of the Suspect Car remained at large outweighed the immediate danger posed to the public as a result of the high-speed police pursuit itself.

36.    Upon information and belief, Pennsylvania State Police Field Regulations concerning police pursuits require pursuing officers to consider several factors in determining whether to continue a police pursuit, including: (a) the seriousness of the offense committed and its relationship to public safety; (b) the condition of the road surface upon which the vehicular pursuit is being conducted; (c) weather conditions; (d) whether the operator can be identified and apprehended at a later time; and (e) if during the pursuit, the operator's actions that endanger other motorists or pedestrians were witnessed by the pursuing member(s).

37.    During the pursuit of the Suspect Car, Defendants Oliveri and Doe State Trooper failed to consider or appreciate, nor did they exhibit any actions supporting the conclusion that they did consider or appreciate, that the seriousness of the offense giving rise to their initial attempt to stop the Suspect Car did **not** amount to a violent, felonious act.

38.    During the pursuit of the Suspect Car, Defendants Oliveri and Doe State Trooper failed to consider or appreciate, nor did they exhibit any actions supporting a conclusion that they did consider or appreciate, that the seriousness of the offense giving rise to their initial attempt to stop the Suspect Car amounted to a summary traffic violation.

39.     During the pursuit of the Suspect Car, Defendants Oliveri and Doe State Trooper failed to consider or appreciate, nor did they exhibit any actions supporting a conclusion that they did consider or appreciate, any of the immediately present factors that their field regulations **required** them to consider, including (a) that the roadways were significantly wet as a result of enduring hours of thunderstorms and rain; (b) that it was actively raining at the time of pursuit of the Suspect Car; (c) that the Suspect Car could be easily traced and identified through the clearly visible license plate numbers; and (d) that they were witnessing the operator of the Suspect Car violate numerous traffic laws, including red lights, stop signs, and speed limits.

40.     Upon information and belief, Pennsylvania State Police Field Regulations concerning police pursuits require pursuing officers to discontinue and terminate a pursuit if the danger posed to the public, pursuing officers, fleeing suspect(s), and/or others is greater than the value of apprehending the suspect(s).

41.     During the pursuit of the Suspect Car prior to the Crash, Defendants Oliveri and Doe State Trooper failed to discontinue and terminate the pursuit despite knowing that the value of apprehending the occupant(s) of the Suspect Car dwarfed in comparison to the significant danger posed to themselves, the occupants of the Suspect Car, and the public, including Mr. Mahhou.

42.     Upon information and belief, Pennsylvania State Police Field Regulations concerning police pursuits require pursuing officers to discontinue and terminate a pursuit if, after all reasonable means to stop a fleeing vehicle have been considered and/or attempted, the continued movement of the pursued vehicle would place others in imminent danger of serious bodily injury or death.

43.     During the pursuit of the Suspect Car prior to the Crash, Defendants Oliveri and Doe State Trooper failed to discontinue and terminate the pursuit of the Subject Car despite all of their considered and/or attempted means to stop the fleeing Suspect Car not working and the dangers of the police pursuit persisting.

44.     Prior to initiating, during, and immediately following the Crash from their pursuit of the Suspect Car, Defendants Oliveri and Doe State Trooper violated numerous laws, PSP field ordinances, directives, policies, and rules pertaining to police pursuits and operating their vehicle on the roadway.

45.     Apprehension of the Suspect Car and its occupant(s) was not an emergency that permitted Defendants Oliveri and Doe State Trooper to engage in the inherently risky and dangerous high speed police pursuit that they ultimately engaged in on May 31, 2025.

46.     On May 31, 2025, pursuant to their employment with the PSP as officers, Defendants Oliveri and Doe State Trooper had an obligation to protect individuals against dangers that they created themselves.

47.     On May 31, 2025, pursuant to their role as PSP employees and under the color of state law, Defendants Oliveri and Doe State Trooper's initiation and engagement of the high-speed pursuit of the Suspect Car caused the harm to Mr. Mahhou, which was foreseeable and fairly direct.

48.     As displayed above and throughout this Complaint, Defendants Oliveri and Doe State Trooper's actions, including their unreasonable and erroneous decision to initiate and continue pursuit of the Suspect Car despite the circumstances, was with such conscious disregard for the great risk of harm to the public, including innocent third-party drivers like Mr. Mahhou, that it shocks the conscience.

49.     Furthermore, as displayed above and throughout this Complaint, Defendants
Oliveri and Doe State Trooper's actions, including their unreasonable and erroneous decision to
initiate and continue pursuit of the Suspect Car despite the circumstances, displayed such brazen
and bold, intentional misuse of their police-issued vehicle in violation of the PSP's policies,
regulations, and guidelines that it shocks the conscience.

50.     It was foreseeable that by pursuing the Suspect Car, Defendants Oliveri and Doe
State Trooper's conduct would cause the Suspect Car to flee. By pursuing the Suspect Car without
justification in a densely populated area, Defendants Oliveri and Doe State Trooper precipitated a
high-speed chase that caused Mr. Mahhou's vehicle to be struck by the Subject Car.

51.     The acts and omissions of Defendants directly and proximately caused the injuries
and damages suffered by Plaintiff.

52.     The dangerous and reckless conduct of Defendants were substantial factors in
causing the injuries sustained by Plaintiff.

53.      As  a direct and proximate result of the intentional and reckless conduct of the
Defendants, Plaintiff was caused to suffer and continues to suffer from the following:

     a. Locked-in Syndrome;
     b. Severe traumatic brain injury with loss of consciousness;
     c. Complete paralysis;
     d. Cervical spinal cord injury;
     e. Multiple compartmental intracranial hemorrhages;
     f. Cerebral edema;
     g. Significant neurological damage;
     h. Confusion;
     i. Loss of life's pleasures;
     j. Conscious pain and suffering;
     k. Mental anguish;
     l. Anxiety;
     m. Past and future medical expenses; and
     n. Past and future lost earnings and lost earning capacity.

54.    Defendants Oliveri and Doe State Trooper, acting under the color of state law, affirmatively caused Plaintiff Mr. Mahhou to be subjected to the deprivation of rights, privileges, and immunities guaranteed by the Constitution and the law.

55.    Accordingly, Plaintiff, Latisha B. Schuenemann, Esquire, as Limited Power of Attorney for Ibrahim Mahhou, brings this civil action against Defendants, Pennsylvania State Police, Domenic Oliveri, and Doe State Trooper, pursuant to 42 U.S.C. § 1983, the doctrinal tenets interpreting this statute, pendant state law claims of negligence, and seek all damages cognizable by law.

### COUNT I: 42 U.S.C. §1983
### State Created Danger in Violation of the Fourteenth Amendment
### Plaintiff v. Domenic Oliveri and John Doe Pennsylvania State Police Officer

56.    The preceding paragraphs and allegations stated above are incorporated by reference as though fully set forth herein.

57.    At all times material hereto, Defendants Oliveri and Doe State Trooper acted under color of state law.

58.    Defendants Oliveri and Doe State Trooper's conduct, as set forth above and herein, evinces a state-created danger.

59.    By engaging in an unjustified high-speed police pursuit in a densely populated area without reasonable belief that the Suspect Car's occupant(s) committed a requisite offense and/or posed an immediate threat to public safety, Defendants Oliveri and Doe State Trooper, as set forth above, were deliberately indifferent and demonstrated a reckless disregard to the safety, bodily integrity, well-being, liberty and substantive due process rights of Ibrahim Mahhou.

60.     Defendants Oliveri and Doe State Trooper's conduct, as set forth above, demonstrates that Defendants acted with conscious disregard of the great risk of serious harm to Mr. Mahhou.

61.     The above-referenced actions rise to a level of intent to cause harm.

62.     Defendants Oliveri and Doe State Trooper's conduct, as set forth above, demonstrates that their conduct affirmatively created an opportunity that otherwise would not have existed for harm to Mr. Mahhou to occur.

63.     Defendants Oliveri and Doe State Trooper's conduct, as set forth above, demonstrates that Defendants unreasonably and unjustifiably placed Mr. Mahhou in a foreseeably dangerous position.

64.     Defendants Oliveri and Doe State Trooper's conduct, as set forth above, demonstrates that the harm caused to Mr. Mahhou was a foreseeable and fairly direct result of Defendants' conduct.

65.     Defendants Oliveri and Doe State Trooper's conduct, as set forth above, violated Mr. Mahhou's constitutional rights, as guaranteed by the United States and Pennsylvania Constitutions, and remediable under 42 U.S.C. § 1983.

66.     Defendants Oliveri and Doe State Trooper were aware that Mr. Mahhou had a clearly established constitutional right to bodily integrity and right to be free of state created danger at the time of the incident.

67.     As a direct and proximate result of Defendants Oliveri and Doe State Trooper's unreasonable, unjustifiable and unconstitutional conduct, Mr. Mahhou were caused to suffer the injuries described in paragraph 53 of this Complaint.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Oliveri and Doe State Trooper, and compensatory damages, jointly and severally, together with attorney fees and costs, and pre- and post-judgment interest. Plaintiff hereby certify pursuant to Local Civil Rule 53.2(3) that the value of Plaintiff's claim is in excess of $150,000 exclusive of interest and costs, and that Plaintiff's claim alleges a violation of rights secured by the U.S. Constitution.

<u>COUNT II: NEGLIGENCE</u>
**Plaintiff v. Domenic Oliveri and John Doe Pennsylvania State Police Officer**

68.     All preceding paragraphs are incorporated as though fully set forth at length herein.

69.     Defendants Oliveri and Doe State Trooper were jointly and severally careless, negligent and/or reckless in the following respect:

  a. Driving at unsafe speeds;
  b. Failing to observe and appreciate traffic controls;
  c. Failing to observe and appreciate proper speed controls;
  d. Failing to observe and appreciate follow traffic signals;
  e. Failing to observe and appreciate road surface conditions;
  f. Failing to observe and appreciate weather conditions;
  g. Initiating the inherently risky and dangerous high speed police pursuit that they ultimately engaged in on May 31, 2025 without proper justification;
  h. Continuing the inherently risky and dangerous high speed police pursuit that they ultimately engaged in on May 31, 2025 without proper justification;
  i. Failing to discontinue and terminate the inherently risky and dangerous high speed police pursuit that they ultimately engaged in on May 31, 2025 despite having no proper justification for the pursuit to occur or proceed;
  j. Failing to adhere to Pennsylvania State Police Field Regulations concerning police pursuits;
  k. Failing to adequately and properly report the pursuit of the Suspect Car to their supervisors;
  l. Failing to adequately and properly notify emergency services or the Philadelphia Police Department that the Crash occurred;
  m. Failing to adequately and properly notify emergency services or the Philadelphia Police Department following the Crash that Mr. Mahhou needed urgent medical care.

70.    As a result of Defendants Oliveri and Doe State Trooper's carelessness, negligence, gross negligence and reckless conduct, Mr. Mahhou sustained serious and permanent disabling personal injuries, including those set forth above.

71.    By conducting themselves as set forth above, Defendants Oliveri and Doe State Trooper's acts and/or omissions were substantial factors and/or factual causes and/or increased the risk of harm to Mr. Mahhou.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, Oliveri and Doe State Trooper, and demands of Defendants, jointly and/or severally, sums in excess of in an amount in excess of $50,000, together with costs, interest, punitive damages, and such other and further relief as this Honorable Court deems necessary and/or appropriate.

## COUNT III: NEGLIGENCE
### Plaintiff v. Pennsylvania State Police

72.    All preceding paragraphs are incorporated as though fully set forth at length herein.

73.    The claims in this count are brought pursuant to the exceptions to sovereign immunity established by 42 Pa.C.S.A. § 8522(b)(1).

74.    Defendant, PSP itself and through its agents and/or employees, Defendants Oliveri and Doe State Trooper, were jointly and severally careless, negligent and/or reckless in the following respect:

      a.   failure to exercise reasonable care and caution under the circumstances at issue;
      b.   negligent operation of its motor vehicle;
      c.   reckless operation of its motor vehicle;
      d.   failure to follow traffic laws;
      e.   unsafe operation of its motor vehicle;
      f.   excessive speeding while operating its motor vehicle;
      g.   failure to have proper policies and procedures in place to address emergency and non-emergency responses by PSP Police Troopers;
      h.   failure to train and supervise Defendants Oliveri and Doe State Trooper regarding motor vehicle operation when responding to non-emergency incidents;

    i.  failure to train and supervise Defendants Oliveri and Doe State Trooper regarding motor vehicle operation when responding to emergency incidents;

    j.  failure to properly code the priority of the call for a vehicles in the roadway;

    k.  failure to train PSP troopers on the duty to intervene;

    l.  failure to implement, train, and supervise troopers on the duty to terminate a vehicle pursuit;

    m.  failure to exercise reasonable care and caution in the operation of the PSP vehicle in PSP's care, custody, and control;

    n.  failure to have proper policies and procedures in place to address the operation of the PSP vehicle in PSP's care, custody, and control;

    o.  failure to train and supervise Defendants Oliveri and Doe State Trooper with respect to the operation of the PSP vehicle in PSP's care, custody, and control;

    p.  failing to maintain the PSP vehicle in proper mechanical condition that would have allowed it to stop or avoid the impact;

    q.  failure to exercise reasonable care and caution in the operation of the PSP vehicle in Defendants Oliveri and Doe State Trooper's care, custody, and control as employees of PSP;

    r.  failure to have PSP vehicle under proper and adequate control as to not endanger the general public including Mr. Mahhou;

    s.  failure to operate the PSP vehicle in accordance with the laws and regulations of the Commonwealth, including obeying speed limits;

    t.  failure to have proper policies and procedures in place to address vehicle operation in accordance with the laws and regulations of the Commonwealth in reasonable and safe manner, including not allowing troopers to drive at excessive speeds;

    u.  failure to train and supervise Defendants Oliveri and Doe State Trooper with respect to those policies regarding vehicle operation in accordance with the laws and regulations of the Commonwealth, including driving at excessive speeds;

    v.  Permitting an inadequately trained and inexperienced PSP Trooper to engage in a high-speed incident response;

    w.  Failing to properly instruct its supervisor officers in the appropriate method of overseeing motor vehicle responses; and;

    x.  otherwise failing to regard the rights, safety, and property of Mr. Mahhou including, but not limited to, the appropriate and supporting sections of the Constitution, the Commonwealth of Pennsylvania Motor Vehicle Code; and the policies and procedures the PSP had or should have had in effect at the time of the Crash.

75.    By reason of Defendant PSP's carelessness, negligence, gross negligence and reckless conduct, Mr. Mahhou sustained serious and permanent disabling personal injuries, including those set forth above.

76.    By conducting itself as set forth above, Defendant's acts and/or omissions were substantial factors and/or factual causes and/or increased the risk of harm to Mr. Mahhou.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendant, Pennsylvania State Police, and demands of Defendant, jointly and/or severally, sums in excess of in an amount in excess of $50,000, together with costs, interest, punitive damages, and such other and further relief as this Honorable Court deems necessary and/or appropriate.

**SALTZ MONGELUZZI BENDESKY, P.C.**

BY: */s/ Aidan B. Carickhoff*
ROBERT J. MONGELUZZI, ESQUIRE
AIDAN B. CARICKHOFF, ESQUIRE
ANWAR T. ABDUR-RAHMAN, ESQUIRE
I.D. Nos. 36283/330394/330191
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA  19103
(215) 496-8282
Fax (215) 496-0999
*Attorneys for Plaintiff*

Date: December 2, 2025

# EXHIBIT A

## NOTICE

THE PURPOSE OF THIS POWER OF ATTORNEY IS TO GIVE THE PERSON YOU DESIGNATE (YOUR "AGENT") BROAD POWERS TO HANDLE YOUR PROPERTY, WHICH MAY INCLUDE POWERS TO SELL OR OTHERWISE DISPOSE OF ANY REAL OR PERSONAL PROPERTY WITHOUT ADVANCE NOTICE TO YOU OR APPROVAL BY YOU.

THIS POWER OF ATTORNEY DOES NOT IMPOSE A DUTY ON YOUR AGENT TO EXERCISE GRANTED POWERS, BUT, WHEN POWERS ARE EXERCISED, YOUR AGENT MUST USE DUE CARE TO ACT FOR YOUR BENEFIT AND IN ACCORDANCE WITH THIS POWER OF ATTORNEY.

YOUR AGENT MAY EXERCISE THE POWERS GIVEN HERE THROUGHOUT YOUR LIFETIME, EVEN AFTER YOU BECOME INCAPACITATED, UNLESS YOU EXPRESSLY LIMIT THE DURATION OF THESE POWERS OR YOU REVOKE THESE POWERS OR A COURT ACTING ON YOUR BEHALF TERMINATES YOUR AGENT'S AUTHORITY.

YOUR AGENT MUST ACT IN ACCORDANCE WITH YOUR REASONABLE EXPECTATIONS TO THE EXTENT ACTUALLY KNOWN BY YOUR AGENT AND, OTHERWISE, IN YOUR BEST INTEREST, ACT IN GOOD FAITH AND ACT ONLY WITHIN THE SCOPE OF AUTHORITY GRANTED BY YOU IN THE POWER OF ATTORNEY.

THE LAW PERMITS YOU, IF YOU CHOOSE, TO GRANT BROAD AUTHORITY TO AN AGENT UNDER POWER OF ATTORNEY, INCLUDING THE ABILITY TO GIVE AWAY ALL OF YOUR PROPERTY WHILE YOU ARE ALIVE OR TO SUBSTANTIALLY CHANGE HOW YOUR PROPERTY IS DISTRIBUTED AT YOUR DEATH. BEFORE SIGNING THIS DOCUMENT, YOU SHOULD SEEK THE ADVICE OF AN ATTORNEY AT LAW TO MAKE SURE YOU UNDERSTAND IT.

A COURT CAN TAKE AWAY THE POWERS OF YOUR AGENT IF IT FINDS YOUR AGENT IS NOT ACTING PROPERLY.

THE POWERS AND DUTIES OF AN AGENT UNDER A POWER OF ATTORNEY ARE EXPLAINED MORE FULLY IN 20 PA.C.S. CH. 56.

IF THERE IS ANYTHING ABOUT THIS FORM THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER OF YOUR OWN CHOOSING TO EXPLAIN IT TO YOU.

I HAVE READ OR HAD EXPLAINED TO ME THIS NOTICE AND I UNDERSTAND ITS CONTENTS.

IN WITNESS WHEREOF, I HAVE EXECUTED THIS NOTICE THIS _6th_ DAY OF October, 2025.

_Jessica Muuy_
Witness

_Ibrahim Mahhou_
Name: IBRAHIM MAHHOU

1

## ACKNOWLEDGMENT

I, LATISHA B. SCHUENEMANN, HAVE READ THE ATTACHED POWER OF ATTORNEY AND AM THE PERSON IDENTIFIED AS THE AGENT FOR THE PRINCIPAL. I HEREBY ACKNOWLEDGE THAT WHEN I ACT AS AGENT:

I SHALL ACT IN ACCORDANCE WITH THE PRINCIPAL'S REASONABLE EXPECTATIONS TO THE EXTENT ACTUALLY KNOWN BY ME AND, OTHERWISE, IN THE PRINCIPAL'S BEST INTEREST, ACT IN GOOD FAITH AND ACT ONLY WITHIN THE SCOPE OF AUTHORITY GRANTED TO ME BY THE PRINCIPAL IN THE POWER OF ATTORNEY.

IN WITNESS WHEREOF, I HAVE EXECUTED THIS ACKNOWLEDGMENT THIS 6th DAY OF October, 2025.

Witness

Name:    LATISHA B. SCHUENEMANN

2

13436468.1

## <u>DURABLE LIMITED FINANCIAL POWER OF ATTORNEY</u>

I, IBRAHIM MAHHOU, of Philadelphia County, Pennsylvania, intending to create a Durable Limited Financial Power of Attorney ("Power of Attorney") do hereby name, constitute and appoint my attorney, LATISHA B. SCHUENEMANN, to serve as my true and lawful Agent ("Agent"), and authorize her to do on my behalf all things and perform all acts with regard to my property and affairs as fully and effectively as I may now or hereafter lawfully do myself, some of which I have illustrated below. I ratify all acts that my Agent lawfully does or causes to be done by virtue of this durable limited power of attorney.

1.      **<u>Duties of My Agent.</u>**  I intend that my Agent shall have the following duties when acting on my behalf:

A.      To act in accordance with my reasonable expectations to the extent actually known by my agent and, otherwise, in my best interest.

B.      To act in good faith.

C.      To act only within the scope of authority granted in this power of attorney.

D.      To attempt to preserve my estate plan to the extent actually known by my agent, if preserving the plan is consistent with my best interest based on all relevant factors including without limitation (1) the value and nature of my property, (2) my foreseeable obligations and need for maintenance, (3) the minimization of taxes, including income, estate, inheritance, generation-skipping transfer and gift taxes, and (4) eligibility for a benefit program, or assistance under a statute or regulation.

E.      To act loyally for the Principal's benefit.

F.      To keep my Agent's funds separate from my funds except as to funds that were not kept separate as of the date I signed this power of attorney.

G.      To act with care, competence and diligence ordinarily exercised by agents in similar circumstances.

H.      To keep detailed and complete records of actions made on my behalf.

I.      To avoid conflicts of interest that impair my Agent's impartiality.

J.      To cooperate with any health care agent acting for me.

13436468.1

2.    **Illustrative and Incidental Powers.** My Agent shall be authorized on my behalf:

A.    In my name to pursue claims and litigation, including, but not limited to, the power to institute, prosecute, defend, abandon, arbitrate, compromise, settle or otherwise dispose of, and appear for me in, any legal proceedings before any tribunal regarding any claim relating to me or to any property interest of mine, collect and give a receipt for any claim or settlement proceeds, waive or release rights of mine, and employ and discharge attorneys and others on such terms (including contingent fee arrangements) and conditions as my Agent shall determine that maybe instituted in the future on my behalf (collectively the "Action").

B.    In connection with the Action, to request all manner of financial and medical records whatsoever concerning me and/or belonging to me, and in furtherance of this authority. I hereby authorize all persons from whom my Agent may request information regarding me, whether concerning my personal or financial affairs or otherwise, to provide such information to my Agent, without limitation, and I hereby release such persons from any legal liability whatsoever to me, my estate, my heirs and assigns for complying with my Agent's requests. I also authorize all health care providers or other covered entities under the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-91, 110 Stat, 1936), to disclose to my Agent, upon my Agent's request, any information, oral or written, regarding my physical or mental health including, but not limited to, medical and hospital records and what may otherwise be considered private, privileged, protected or personal health information, as may be requested from time to time.

C.    In connection with the Action, to request and access my confidential financial records, including without limitation bank and investment account records, and in furtherance of this power I hereby authorize all financial institutions to disclose to my Agent upon my Agent's request any information, oral or written, regarding my financial records, as may be requested from time to time.

D.    In connection with the Action, to demand payment of all sums now or hereafter owing to me and other sums of money now or hereafter owing to me, and give receipts therefor.

E.    In connection with the Action, to pay or settle my debts and make payments for my support and welfare. For this purpose my Agent may purchase medical and hospitalization insurance for me.

F.    In connection with the Action, to engage in insurance and annuity transactions, including, but not limited to, the power to purchase, continue, renew, convert, terminate or surrender any type of insurance, including, but not limited to (i) life insurance or annuities of any kind on my life or the life of anyone in whom I have an insurable interest, (ii) liability insurance protecting me and my estate against third party claims, (iii) hospital insurance, medical insurance, and Medicare supplement insurance, custodial care insurance and disability income insurance for me or any of my dependents, (iv) casualty insurance insuring assets of mine against loss or damage due to fire, theft, or other commonly insured risk, and (v) sell an insurance policy on the secondary market, and change a beneficiary designation with respect to a policy I

4

own, except that no Agent may exercise any incident of ownership that I might have or acquire in any policy of insurance on such Agent's own life; to pay all insurance premiums, to select any options under any such policy, to increase coverage under any such policy, to borrow against any such policy, to pursue all insurance claims on my behalf, to adjust insurance losses; the foregoing powers shall apply to private and public plans, including, but not limited to, Medicare, Medicaid, SSI and Worker's Compensation; to decrease coverage under or cancel any of the policies described herein; and to receive and make such disposition of the cash value upon termination of any such policy as my Agent shall deem appropriate.

G.    In connection with the Action, to pursue tax matters, including, but not limited to, the power to prepare, sign, verify and file all tax returns required to be made by me, for any taxable year, including, but not limited to, all income tax returns, declarations of estimated tax, gift tax returns, estimates, claims for refund, requests for extensions of time, and consents or protests in my name; to pay the taxes due, collect any refunds, sign waivers extending the period for the assessment of such taxes or deficiencies, sign consents to the immediate assessment of deficiencies and acceptances of proposed overassessments, execute closing agreements, sign Internal Revenue Service powers of attorney, represent me before any taxing authority and protest and litigate any tax assessment or liability.

H.    In connection with the Action, to employ and compensate at my expense any attorney, accountant, investment advisor, asset custodian, trustee, manager of any of my assets or other person or institution to render services for my benefit, and to terminate the services of any of the foregoing.

I.    In connection with the Action, to request, receive and review any information, verbal or written, regarding my personal affairs and to execute any releases or other documents that may be required in order to obtain such information, and to disclose such information to such persons, organizations, firms or corporations as my Agent shall deem appropriate.

3.    **Powers Regarding Digital Assets, Online Accounts, and Social Media.**

A.    In connection with the Action, to obtain my digital assets, wherever held and whether in my name alone or held jointly. My Agent is specifically authorized to request and change my access credentials for any online account, such as username, password, and secret question. This authority specifically includes, but is not limited to, bank accounts, investment and brokerage accounts, accounts with health care providers, social media accounts (like Facebook and Twitter), gambling and poker accounts, accounts with publishers, accounts for access to employee benefits, email accounts, accounts with internet service providers, accounts to manage websites and website domain names, accounts with retail vendors, accounts with utility companies, and all other accounts that may be accessed through electronic or other means.

B.    In connection with the Action, to access, establish, manage, deactivate, cancel, delete or continue online accounts (through the internet or other similar methods) of all kinds of digital assets and the records and contents of my electronic communications.

C.    In connection with the Action, to obtain any records of my electronic

13436468.1

communications controlled by an electronic communication service or a remote computing service, including a log of the electronic address of each party with whom I communicate.

    D.  In connection with the Action, to obtain the contents of each electronic communication controlled by an electronic communication service or a remote computing service sent or received by me, to the extent consistent with 18 U.S.C. Section 2702(b).

  **4.**  <u>**Estate Planning Powers**</u>.

    A.  In connection with the Action, the following powers given to my Agent, are intended to empower my Agent to develop and/or modify an estate plan for me that my Agent reasonably determines is in keeping with my wishes and best interests so far as they can be ascertained with respect to any settlement proceeds that may be received on behalf in connection with the Action, without petition to or obtaining leave of court. To that end, I hereby declare that my intentions for my estate plan include the following:

      (1)  Minimizing taxes, including income, estate, inheritance, generation-skipping transfer and gift taxes, payable by me and the beneficiaries of my estate.

      (2)  Establishing and maintaining my eligibility for benefits, programs or other forms of assistance available under any statute or regulations.

      (3)  Protecting my assets from being dissipated to pay for the cost of health care, medical expenses and nursing home expenses; and

    B.  In light of the foregoing, I hereby authorize my Agent with respect to any settlement proceeds that may be received on my behalf in connection with the Action:

      (1)  To create, amend, revoke or terminate an inter vivos trust as permitted under 20 Pa C.S. §5602(a)(2) and (3).

      (2)  To create a trust for my benefit (whether revocable or irrevocable), to make additions to an existing trust for my benefit, and withdraw and receive the income or principal of a trust. This power shall include, without limitation, the power to execute a deed of trust, designating one or more persons (including my Agent) as original or successor trustees and transfer to the trust any or all property owned by me as my Agent may decide, and/or make additions to an existing trust for my benefit, including the power at any time or times to add any or all of the property owned by me to any trust in existence when the power was created, and the power to withdraw and receive the income or corpus of any trust in which I have an interest at any time or times whether currently in existence or hereinafter created. This power shall also include the power to amend or revoke any trust created pursuant to the authority granted under this paragraph, as well as the power to amend or revoke any other trust I may have created and over which I have a power to amend or revoke under the terms of such trust. Also, without limiting the authority granted to my Agent in this paragraph, my Agent may: (1) create and fund a sole-benefit trust in accordance with United State Code, Title 42, Section 1396p(c)(2)(B); (2) create and fund a self-settled special needs trust in accordance with United States Code, Title 42, Section 1396p(d)(4)(A) or Section 1396p(d)(4)(C); and (3) create and fund a qualified ABLE account in accordance with United States Code, Title 26, Section 529A.

  **5.**  <u>**Revocation and Amendment.**</u> I retain the right to revoke or amend this Power of Attorney.

13436468.1

6.     **Durability, Recording, Severability, Choice of Law and Miscellaneous.**

        A.     This Power of Attorney shall not be affected by lapse of time or my subsequent disability or incapacity.

        B.     I authorize any original or copy of this Power of Attorney executed by me to be filed or recorded at any time with any institution or person and in any public office. I hereby authorize all persons and institutions to whom this Power of Attorney is presented to accept and honor a photocopy of the original instrument when presented by my Agent who shall certify that the Power of Attorney has not been revoked.

        C.     Any provision of this Power of Attorney judicially determined to be unenforceable or invalid for any reason shall be entirely disregarded and such determination shall not affect any other provisions hereof.

        D.     My Agent shall keep accurate records concerning each transaction occurring under this Power of Attorney and upon request shall furnish an account to me or to the Personal Representative of my estate.

        E.     My Agent shall not be required to post bond of any nature in connection with this Power of Attorney.

        F.     The construction, effect, validity and performance of this Power of Attorney shall be governed by the internal substantive law of the Commonwealth of Pennsylvania, where I have executed and acknowledged this instrument.

        G.     My Agent shall be reimbursed for all out-of-pocket expenses which my Agent reasonably incurs in the conduct of my affairs pursuant to this Power of Attorney. Within thirty (30) days after the end of each calendar year, during which my Agent conducts any of my financial affairs, my Agent shall furnish to me (and to my closest living relative other than my Agent, if I am physically or mentally unable to conduct my affairs) a statement showing my assets then held by my Agent and such receipts and disbursements for my account during that twelve (12) month period. The duty to account, set forth in the preceding sentence, shall not apply if my spouse is acting as my Agent hereunder. My Agent shall not be required to make or file any inventory or appraisal or file annual or other returns or reports with any Court.

        H.     No person or institution who acts in reliance upon any representations my Agent may make as to (i) the fact that my Agent's powers are then in effect, (ii) the scope of my Agent's authority under this Power of Attorney, (iii) my competency at the time I executed this Power of Attorney, (iv) the fact that this Power of Attorney has not been revoked, or (v) the fact that my Agent continues to serve as my Agent, shall incur any liability to me, my estate, my heirs or assigns for permitting my Agent to exercise any such authority. No person or institution who deals with my Agent shall be responsible to determine or insure the proper application of funds or property.

        I.     I hereby authorize all persons from whom my Agent may request information, either that I am entitled to receive or regarding me, my personal or financial affairs, to provide such information to my Agent without limitation and I hereby release such persons

13436468.1

from any legal liability whatsoever to me, my estate, my heirs and assigns for complying with my Agent's requests.

        J.      If any third party with whom my Agent seeks to transact business refuses to recognize my Agent's authority to act on my behalf pursuant to this Power of Attorney, unless said third party has received written notice from me that this Power of Attorney has been revoked or unless such person or institution has actual knowledge of my death, I authorize my Agent to sue and recover from such third party all resulting damages, costs, expenses and attorney's fees that are incurred because of such failure to act. The costs, expenses, and attorney's fees incurred in bringing such action shall be charged against my general assets, to the extent they are not recovered from said third party.

      This Durable Limited Financial Power of Attorney shall be effective and shall begin immediately upon my signing said document and shall continue, unless revoked by me, for the duration of my life. I hereby revoke all prior Durable Financial Powers of Attorney and/or Durable General Powers of Attorney that I may have previously executed. This Durable Financial Power of Attorney is signed this ___6ᵗʰ___ day of October, 2025.

_____

Witness

                                            _____ (SEAL)

                                            IBRAHIM MAHHOU

_____

Witness

13436468.1

COMMONWEALTH OF PENNSYLVANIA        :
                                    : ss.
COUNTY OF _Montgomery_               :

We, _Leticia Abdon_ and _Jessica Mowry_, the witnesses whose names are signed to the foregoing instrument, being first duly sworn, do hereby declare the undersigned authority that we were present when IBRAHIM MAHHOU's name was subscribed in his presence at his direction and authority as his Durable Financial Power of Attorney and that he gave such direction and authority willingly, as his free and voluntary act for the purposes therein expressed, and that each of the witnesses, in the presence and hearing of IBRAHIM MAHHOU and of one another, signed the Durable Financial Power of Attorney as witness and that to the best of his or her knowledge IBRAHIM MAHHOU was at that time, eighteen (18) years of age or older, of sound mind and under no constraint or undue influence.

Print Name: _Leticia V. Abdon_

Print Name: _Jessica Mowry_

Subscribed, sworn to and acknowledged before me on this _6th_ day of October, 2025, by _Leticia Abdon_ and _Jessica Mowry_, the witnesses, and by IBRAHIM MAHHOU, the principal, who in my presence directed and authorized ANWAR ABDUR-RAHMAN to sign his name and that he gave that direction and authorization willingly, as his free and voluntary act for the purposes therein expressed, all such individuals known to me (or satisfactory proven) to be the persons whose names are subscribed to the within instrument and who acknowledged that they each executed the same for the purposes therein contained.

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Melanie A. Taylor, Notary Public
Berks County
My commission expires November 9, 2026
Commission number 1165106
Member, Pennsylvania Association of Notaries

9

13436468.1

# **VERIFICATION**

I, Latisha B. Schuenemann, Esquire, as Limited Power of Attorney for Ibrahim Mahhou, hereby verify that I am the Plaintiff in the foregoing action and that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of this lawsuit.  The language of the Complaint is that of counsel and not of affiant.  I have read the Complaint and to the extent that the allegations therein are based upon information I have given to counsel, they are true and correct to the best of my knowledge, information, and belief.  To the extent that the contents of the Complaint are those of counsel, I have relied upon counsel in making this Verification.  I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Latisha B. Schuenemann, Esquire, as Limited Power of Attorney for Ibrahim Mahhou

Date:          12/02/2025